TYSON, Judge.
On May 3, 1983, 434 So.2d 877, this court unanimously, without opinion, affirmed this case. Because of the earnest nature of appellant’s application and motion on file with this court, this opinion follows.
Mitchell (Mickey) Hanna White was indicted for the murder of Oscar Holcombe “by stabbing him with a knife” in violation of § 13A-6-2, Code of Alabama.
The Honorable Arthur Clarke was appointed to represent the appellant and at arraignment entered a not guilty plea and filed an extensive motion to produce. This motion was handled by agreement with the district attorney’s office and the cause thereafter proceeded to trial.
The jury found the appellant “guilty of murder as charged” and following a sentencing investigation, at which two prior felonies were placed in evidence, the appellant was sentenced to life imprisonment.
At trial, Ralph Kirk Engelberger, told of driving to the home of Oscar Holcombe on the afternoon of July 2, 1981, to borrow a lawn mower. He stated he had a friend of his ride over with him. He knocked on the door, but noticed that the back door was open, and upon not getting a response, he opened same. He stated he called for Hol-combe and noticed a musty odor about the house and he and his companion went in. They noticed that the phone was unplugged and upon walking back into the bedroom, found the body of Oscar Holcombe. He then telephoned police. He stated on cross-examination that he did not see any marijuana in the house.
Officer Larry Hearne testified that in response to a dispatch, he went to 1203 Middle Ring Road at about 12:30 p.m. on July 2, 1981. Upon entering the home, he found the body of a white male, who had been lying face down in a pool of blood, with a number of what appeared to be stab wounds. He stated that he found a set of scales and some bags of white powdery material and upon later search of the home, some marijuana was found.
Detective Sergeant Wilbur Williams testified that he went to the home of Oscar Holcombe, the victim, about 12:45 in the afternoon of July 2, 1981, and there conducted an investigation of a homicide. He took a number of photographs, including those of an automobile in which he found some marijuana and identified a single piece of paper from a desk pad, dated June 30, 1981, with the name “Mickey” and a telephone number. Later investigation determined that the telephone was listed to one Larry B. Wilson who lived at 118 Glen-wood Street, Mobile, Alabama, but in fact, the phone number belonged to one Johnny Chestang. He also described human blood which was found on the wall and on a towel and further identified a towel which was later found in a dumpster just outside a 7-11 store in Chickasaw on July 2, 1981, at the intersection of Thompson - Boulevard and Iroquois Street. He testified that he found a total of 5145.1 grams or 11.34 pounds of green plant material in the car and home, which were later determined to be marijuana.
The stepmother of the victim, Emma Hol-combe, stated that she last talked with her stepson on the evening of June 30, 1981, between 6:15 and 7:15 by telephone.
John Boyd, a 25 year old white laborer, testified that along with a friend named Kenny Biggs, he drove to the home of Oscar Holcombe on the night of June 30, 1981, where each purchased ¼ pound of marijuana and paid Holcombe $165 each. He stated that this was about 6:30 that evening and that they noticed a small gray, four door car, either Datsun or Toyota, in front of the house with two men inside. He *1369 stated that after paying Holcombe for the marijuana, they left.
Richard Harbin, who lived at 206 Autumn Drive, Saraland, Alabama, testified that he knew the appellant, Mitchell “Mickey” Hanna White, and stated that on the morning of June 30, 1981, White requested him to give him a ride to see a friend in Chickasaw. He stated that he had a 1972 Datsun, gray, and that they drove out by the house of a man that White stated he could purchase some marijuana from. He later took White by White’s mother’s house. He stated that they went back by the house past Chickasaw toward Saraland and parked. They saw a maroon colored car with two men go in the house. He stated that after the two men left, White got out, saying that he wanted to get something from the man inside. He stated that when the appellant returned, he was carrying a garbage bag and holding his arm and had something wrapped around it which looked like a towel. White said that there was some marijuana in it. He stated that at that time he did not notice a cut or injury, but that later White asked him to take him back by his mother’s and he said that he had cut his hand and arm on a shovel and wanted something to put on it. He stated that he went in his mother’s house and came out wearing the same clothes, but had bandaged his arm and that White got him to take him by the Suburban Hospital where he was treated for a deep cut on his arm. He stated that later the two of them went and had some drinks.
On cross-examination, he said that he did not notice any blood on the appellant when he came out of the residence where he bought the marijuana at first. Upon being shown a towel on cross-examination, he said that it looked like the towel that he had seen in the appellant’s possession when leaving the house.
Dr. Leroy Riddick, coroner for Mobile County, stated he performed an autopsy on the body of Oscar Holcombe on July 2,1981. He said that the body was partially decomposed and that he estimated the man had been dead for 30 to 36 hours. He stated that there was more than 10% alcohol in the blood and also traces of Methaqualone. He stated that he found eight or nine serious stab wounds on the body and the cause of death was due to multiple stab wounds to the neck, chest and flank. He examined a “butcher knife” and said that the knife wounds on the body would be consistent with the use of such a knife.
Wayne Keith Plaisance testified that he was shown a piece of paper from the desk calendar with a name and phone number on it by Sergeant Williams on July 7,1981, and stated that he wrote the name “Mickey” and a phone number on same, 479-3935, before Oscar Holcombe died. He stated that he wrote this on June 30, 1981.
Cindy Saint Laurent testified that appellant, Mitchell Hanna White, telephoned her July 1, 1981, stating that he wanted to talk to her ex-fiance, Donald. She stated that she picked him up at his mother’s home in Chickasaw and took him by Eckerds Drug Store to get a prescription and then by his cousin’s house. She stated that they stopped by a Jill’s Lunchbox in Saraland, and then he asked her to stop near a 7-11 on Iroquois Street, and she saw him walk behind the 7-11 and throw some items from a brown paper bag into a Dempsey dumpster. When he returned to the car, the bag* and its contents were not with him. She also noticed him open a newspaper and turn immediately to the page where write-ups of criminal cases were and made the comment, laughingly, “Well, must not be a whole lot going on.”
James Robert Reeves, Jr., testified that he was an employee of the 7-11 store in Chickasaw and went to put out some trash in a dumpster and on looking inside he saw some boxes and on top of the boxes was what appeared to be credit cards lying in a stack. He thought maybe someone had stolen another person’s wallet. He said he climbed inside and picked up a driver’s license and several credit cards belonging to an Oscar Holcombe. He stated that he also found an old butcher knife which was lying in some water. The knife had a wooden handle. He also found a towel that ap *1370 peared to have blood stains. He stated that he turned these over to police.
John Wayne Boone testified that he made an arrest of appellant in Pensacola, Florida, and before doing so, read him his Miranda rights and later, on July 14, brought him back to Mobile to police headquarters. He stated that he read the appellant his Miranda rights as they drove to Mobile and a third time upon arrival at Mobile Police Headquarters.
Sergeant Wilbur Williams testified that he was present when Officer Boone on two occasions read the appellant his Miranda rights and at no time did either of them threaten, intimidate, coerce, or offer any inducements to the appellant to obtain a statement.
At police headquarters in Mobile, the appellant made the following statement:
“A Mr. White related to us during this time that he ... the fact that he had been to Oscar’s house twice on the during the day of June 30,1981, and that the last time that he went there in the company of Rick Harbin, that he did, in fact, go into the home of Oscar Hol-combe, and that he did, in fact, go there for the purpose of trying to get Oscar to, in narcotics trade terms, front him some marijuana.
“Q All right, to lay folks, what does it mean when you front marijuana?
“A What it means is, that if you have someone that sells or distributes marijuana, and you don’t have enough money to buy it, you go to him and ask him to loan it to you, or front it to you, and then as you sell it, then you repay the person that you got it from. So it is kind of like a consignment thing, where he took the marijuana and sold it, and then paid the person back the money for the marijuana.
“Q Did he say why he went for the purpose of having the marijuana fronted, as opposed to paying for it?
“A He said that he had been in jail for several months on some unrelated charges, charges that were brought by a female companion of his, that he was broke, he didn’t have any money, and that he owed his lawyer a lot of money, and that he was going to try to get some ... the marijuana from Mr. Holcombe to sell to pay his lawyer off and to get some spending money.
“Q With reference to the specific issue of money, now you testified earlier extensively about the crime scene investigation. Was there any money discovered in that house, meaning Oscar Holcombe’s house?
“A I remained in Oscar Holcombe’s house for approximately two days after the murder. Approximately 14 hours spent in the home, and I found six dollars in the right front pocket of Oscar Hol-combe’s britches that he had on, and there was a jug on his dresser in the No. 1 bedroom of assorted change that one might put in there in the evening when _ he comes home from work, and there was not another dime found in that house.
“Q All that was found was six dollars and some change?
“A Yes, sir, that’s correct.” (R. 123— 124).
Sergeant Williams also testified that he recovered the credit cards, knife and towel from the 7-11 in Chickasaw, and turned them over to the toxicologist’s office for examination. He said that the knife had been lying in water, but that the stains on the towel were determined to be human blood of the same type of the victim, Oscar Holcombe.
At this point, the appellant made a motion to exclude the State’s evidence for lack of a prima facie case and this was overruled. Appellant did not present any evidence at trial and made no exception to the trial court’s oral charge.
I
The appellant presented some 24 written requested charges, six of which were given by the trial judge. The balance of these charges were either covered in the oral charge of the court or the given charges. Section 12-16-13, Code of Alabama 1975.
*1371 II
Appellant’s counsel objected at trial to some of the photographs of the crime scene and of the victim on the basis of being too inflammatory and containing blood. These were properly admitted as evidence. Brodka v. State, 53 Ala.App. 125, 298 So.2d 55 (1973) and cases cited therein.
III
On appeal, appellant’s counsel mentions an amendment of the indictment, over objection in open court, referring to record pages 3 and 4.
This objection, however, does not appear in this record. Record pages 3 and 4 are the arraignment and setting of bond pending trial, and from the trial transcript, record pages 3 and 4 contain the index of this trial. Thus any issue with reference the indictment is not present in this record. Moreover, the indictment is in Code form and properly charges murder. Thus, no error appears.
This record is free of error. The application for rehearing is hereby overruled and this case is affirmed.
APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
All the Judges concur.